## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MICHAEL D. PITTMAN,

        Petitioner,

v.

LUCINDA JESSON, COMMISSIONER
OF DEPARTMENT OF HUMAN
SERVICES, DENNIS BENSON, CEO OF
MINNESOTA SEX OFFENDER
PROGRAM (MSOP),

        Respondents.

**REPORT**
**&**
**RECOMMENDATION**

> Michael D. Pittman, 1111 Highway 73, Moose Lake, Minnesota 55767-9452, *pro se* Petitioner; and
>
> Matthew Frank and Steven H. Alpert, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, Minnesota 55101-2128; and Stephen P. McLaughlin, **RAMSEY COUNTY ATTORNEY**, Human Services-Commitments, 121 Seventh Place E., Suite 4500, St. Paul, Minnesota 55105, for Respondents.

## I.      INTRODUCTION

This matter is before the Court, Magistrate Judge Tony N. Leung, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Docket No. 1). The action has been referred to the magistrate judge for report and recommendation to United States District Judge Susan R. Nelson under 28 U.S.C. § 636 and Local Rule 72.2(b).

For the reasons stated below, this Court **RECOMMENDS** as follows:  the

Petition for Writ of Habeas Corpus (Docket No. 1) be **DENIED**; this action be

**DISMISSED WITH PREJUDICE**; and the certificate of appealability be **DENIED.**

## II.      BACKGROUND

Petitioner Michael D. Pittman brings the present petition challenging his

indeterminate commitment as a Sexually Dangerous Person and as a person with a Sexual

Psychopathic Personality ("SDP/SPP") under the Minnesota Commitment and Treatment

Act ("MCTA"), Minn. Stat. § 253B.13.  Petitioner was initially committed as a SDP/SPP

on August 28, 2009, and he was indeterminately committed on December 1, 2010.

(R. 301, 547.)

### A. Initial Commitment Proceedings

On October 16, 2008, the Ramsey County Attorney's Office ("County") filed a

petition to commit Petitioner as a SDP/SSP pursuant to upon his release from the

Minnesota Correctional Facility-Stillwater.  (R. 1.)  The court held a commitment hearing

April 23, 2009, and April 24, 2009.  (R. 51.)  The court heard testimony from Dr.

Rosemary Linderman, a licensed psychologist with extensive education in "areas related

to dynamic and static risk, risk assessment, issues related to the assessment of sexual

predators, civil commitment issues, [and] criminal issues."  (R. 58.)  Dr. Linderman

testified that, according to her evaluation, Petitioner exhibited a course of harmful sexual

conduct, manifested a sexual personality disorder, and was highly likely to engage in

further acts of prohibited sexual conduct if released.  (R. 100-04.)  She also testified that

she believed Petitioner's case reflected an inability to control his behavior.  (R. 111.)  The

court also heard testimony from James Vincent Wojcik, Ph.D.; Peter Meyers, Psy. D.; and Petitioner.

Evidence of Petitioner's harmful sexual conduct included incidents occurring in both Kansas and Minnesota. Between 1988 and 1989, Petitioner had harmful sexual contact with three victims aged five, six, and seven in Kansas.[1] In Minnesota, Petitioner was charged with anally and vaginally raping his two seven-year-old step-daughters while his five-year-old son watched in 1995; two incidents of unwanted sexual touching of other inmates by Respondent at Minnesota Correctional Facility at Moose Lake in June and July 2008; and anally raping another inmate while he was serving time at MCF-Moose Lake in August 1999. (R. 304-07.)

After hearing the live testimony and considering the evidence in the record, the court determined that the government had proven by clear and convincing evidence that, "as a result of his past course of harmful sexual conduct, his mental disorders, and the resulting impairment of his ability to control his sexual impulses, it is highly likely that [Petitioner] will engage in further harmful sexual conduct if not treated under civil commitment." (R. 322.) The court determined that the County had "satisfie[d] the requirements of commitment as" both a SDP and a SPP and ordered Petitioner committed. (R. 322-23.)

---

[1] Before the commitment proceedings, Petitioner, through his counsel, filed a motion to exclude records of three felony counts of indecent liberties with a child that were filed against Petitioner in 1989 in the state of Kansas. (R. 20-21.) The district court determined that "the Minnesota Commitment and Treatment Act provides a . . . liberal approach to the admissibility of evidence" (R. 48), and the district court concluded that the contested evidence was relevant to the issues raised in the Petition and denied Petitioner's Motion. (R. 48-50.)

Petitioner appealed the court's initial commitment order to the Minnesota Court of Appeals, arguing that (1) the district court erred in admitting evidence "contain[ing] records regarding charges that were brought against [Petitioner] in 1989," and (2) admitting such evidence resulted in a violation of Petitioner's due process rights. (R. 439-40.)  Petitioner argued that the evidence in question was unreliable hearsay and inadmissible under the Minnesota Rules of Evidence.  He further argued that it was "fundamentally unfair that dismissed criminal charges from a foreign jurisdiction that were never admitted in that jurisdiction, should stand as evidence on its own validity." (R. 442.)

The Minnesota Court of Appeals considered Petitioner's evidentiary and constitutional arguments:

> Evidence of [Petitioner's] sexual conduct with three children resulting in a diversionary disposition in 1989 in Kansas is clearly *relevant* to these civil-commitment proceedings, in which Pittman is alleged to be an SDP and a person with an SPP.  Accordingly, [Petitioner's] arguments challenging the admissibility of this evidence on Minn. R. Evid. 410 (barring evidence of a plea of *nolo contendere*) and its failure to meet the legal standards of Minn. R. Evid. 803(6) (business records exception) and 807 (residual hearsay exception) fail.
>
> [Petitioner] also argues that his constitutional rights were violated by the district court's admission of [the contested evidence].  He asserts that it was "fundamentally unfair that dismissed criminal charges from a foreign jurisdiction that were never admitted in that jurisdiction, should stand as evidence on its own validity."  [Petitioner's] constitutional challenge appears to be rooted in procedural due process, which ensures that "[w]hen government action depriving a person of life, liberty, or property survives substantive due process scrutiny, [that action] must still be implemented in a fair manner."  Minnesota's civil-commitment statutes have

survived constitutional challenges on substantive due-process grounds.

In Minnesota, although the district court is given discretion to "admit all relevant, reliable evidence, including but not limited to the respondent's medical records, without requiring foundation witnesses," constitutional due-process guarantees also require an evaluation of the proffered evidence to determine its reliability even if it is relevant. . . .

Here, the district court reviewed [the contested evidence] and determined that it was admissible in this civil-commitment proceeding. . . . According to the Assistant Ramsey County Attorney who represented the county in its petition to civilly commit [Petitioner], his office obtained these records in response to a written request to the District Attorney of Wyandotte County, Kansas City, Kansas. The documents are public information and are not subject to any disclosure restrictions. These materials were sent to the examiners without objection by [Petitioner's] counsel, and the three examiners considered the documents . . . when formulating their written reports and recommendations to the district court.

. . .

[The contested evidence], particularly the police reports, were generated closely in time to the events they describe and "include the accounts of firsthand witnesses, the victims." The statements made by the victims are internally consistent and are generally consistent with each other, which lends some corroboration to the victims' claims. In addition, many of the documents are copies of medical records or of records generated by the courts and by police investigating criminal activity. These documents have sufficient indicia of reliability, notwithstanding the presence of some secondhand accounts, to meet due-process requirements.

(R. 441-44 (citations omitted).) Based on the above, the Court of Appeals affirmed

Petitioner's commitment. (R. 444.)

Petitioner then appealed to the Minnesota Supreme Court, arguing that admitting evidence of the 1989 charges violated his due process rights under the Minnesota Constitution and his substantive due process rights, citing *Foucha v. Louisiana*, 503 U.S. 71 (1992).  (R. 445-46.)  On June 29, 2010, the Minnesota Supreme Court denied review. (R. 508.)

**B.  Petitioner's Detention Review Hearing**

The district court held a detention review hearing[2] on September 21, 2010. (R. 509.)  At the beginning of the hearing, the court asked whether the parties were ready to proceed, and Petitioner's counsel responded:

> I went to see my client to prepare me for this hearing, and at that time, he did not see me.  When I saw him, I didn't know if he was even coming.  He has given me an abundance of paperwork here regarding a motion that he wishes the Court to consider regarding what he believes is new information.
>
> . . .
>
> I've had a brief time to review what [Petitioner] is asking for. He is asking for a new hearing based on what he considers new evidence, which is, I'd say, at least, a 100, maybe 150 pages of articles regarding the scores used for a Risk Assessment by Dr. Linderman and by Dr. Meyers.
>
> . . .
>
> . . . [W]hat I would request here, Your Honor, because this was just given to me when I came here today, I would request that we proceed today with the hearing, and then I could evaluate [Petitioner's] request if the Court would be allowed

---

[2] At the time of Petitioner's commitment, Minnesota law required a second review hearing after a prisoner was committed as SDP/SPP.  Minn. Stat. § 253B.18, subs. 2, 3, *repealed as applied to SDP and SPP commitments*, Minn. Laws 2011, c. 102, art. 3, s. 1.

> to leave the record open for at least 15 days, so that I could
> evaluate this and submit it if I believe that it's a valid motion.

(R. 512-16.)  The court agreed to this arrangement.  (R. 517.)  The court also considered a

May 13, 2010 report prepared by Dr. Gary Hertog and a July 1, 2010 Progress Note.

(R. 520-21.)  The court also heard live testimony from Petitioner.  (R. 522.)  No

subsequent briefing regarding the papers Petitioner had brought to the hearing was ever

filed.

The court issued an order for indeterminate commitment on December 1, 2010.

(R. 547.)  In its Findings of Fact and Conclusions of Law, the court directly addressed

Petitioner's argument that his earlier psychological testing was flawed.  The court found

"that by knowingly waiving his right to an examiner of his choice for the . . . review

hearing, [Petitioner] waived his claim that there were errors in his past psychological

testing."  (R. 550.)  The court found no change in Petitioner's condition and determined

that clear and convincing evidence still supported his commitment as SDP/SPP.  (R. 551.)

The court then ordered that he be committed indeterminately.  (*Id.*)

### C.  Second Round of Appeals

Petitioner appealed this final commitment order *pro se*.  (R. 553.)  On appeal, he

argued that (1) the evidence was insufficient to support indeterminate commitment (R.

557-59, 566-68); (2) the Minnesota Sex Offender Program ("MSOP") was not the least

restrictive alternative to meet Petitioner's treatment needs (R. 560-62); and (3) Petitioner

was denied his constitutional right to effective assistance of counsel (R. 562-64).

The Minnesota Court of Appeals addressed each of Petitioner's arguments:

The district court found that the following incidents of harmful sexual conduct occurred: (1) in 1989, while living in Kansas, [Petitioner] had sexual contact with three children, aged five, six, and seven; the incidents described fit the definition of second-degree criminal sexual conduct; (2) in 1995, [Petitioner] was charged with two counts of first-degree criminal sexual conduct with two seven-year old girls; a five-year old boy witnessed some of the assaults. Although [Petitioner] was charged only with two counts of first-degree criminal sexual conduct, the children described multiple contacts. [Petitioner] pleaded guilty to one count of first-degree criminal sexual conduct; (3) in 1999, [Petitioner] forcibly anally raped another inmate while incarcerated and caused the inmate to suffer both a broken rib and a head injury; (4) two inmates at Moose Lake reported unwanted sexual contact by [Petitioner] in 2008 while [Petitioner] was participating in sex offender treatment.

Including witness statements, the evidence supporting the district court's findings of a course of conduct is clear and convincing. [Petitioner] asserts that the Kansas evidence is not clear and convincing and should have been excluded, but this court previously determined that this evidence was credible and admissible. The district court here also found that [Petitioner] was not credible in his denial of the conduct in Kansas. There is sufficient evidence of a course of harmful sexual conduct to support [Petitioner's] commitment as SDP.

. . .

Although the court did not enumerate which findings support its conclusion, it made the following findings that support treatment in a secure setting: (1) [Petitioner] raped a fellow prisoner "while in the highest security setting of the prison"; (2) [Petitioner] made "poor progress in treatment, was intimidating to peers and quit treatment shortly after a polygraph report indicated that he was not being truthful about his sexual offending history"; (3) [Petitioner] reoffended after three years of outpatient treatment in 1989-92 and while on supervised release in 2005; (4) the warden at the Moose Lake Correctional Facility identified [Petitioner] as "one of the most difficult offenders that they have had in the program" and described [Petitioner] as "extremely angry"

and "display[ing] significant anger when dealing with corrections staff"; (5) examiner Dr. Meyers concluded that "if [Petitioner] cannot behave in a controlled prison environment it is less likely that he will behave in a safe manner in open society."

[Petitioner] has the burden of establishing by clear and convincing evidence that a less restrictive program can meet his needs and public safety concerns. He suggested that he could check in with the Alpha program once a week and that he could talk with a religious leader. This does not meet the standard of clear and convincing evidence of a viable alternative.

. . .

[Petitioner] identifies the following as deficiencies in his representation: (1) [Petitioner's] counsel objected, was overruled, yet failed to object to the overruling; (2) [Petitioner's] counsel failed to "attack" the "heart of [Petitioner's] liberty interest" during his direct and redirect examination and did not cite any case law that would help defend against indeterminate commitment; and (3) [Petitioner's] counsel notified the court that [Petitioner] had been working on a motion to present the court, but "never argued the contents of the evidence presented to the court, however, agreed with the court, and stated that the evidence would be evaluated."

. . .

Counsel's failure to object to the district court's ruling on her objection does not support an allegation of ineffective assistance of counsel; deciding which objections to make is a matter of trial strategy and, in this instance, court decorum.

Although counsel cited to no case during direct and redirect examination of [Petitioner], she filed several trial briefs citing supporting law and appealed the district court's decision in limine to this court.

Finally, [Petitioner] did not provide counsel with his motion papers for the review hearing until the day of the review

> hearing and refused to meet with her in order to prepare for
> the hearing. [Petitioner's] motion concerned the validity of
> the diagnostic tests administered by Dr. Linderman, but
> [Petitioner] also waived his right to an independent medical
> examiner, who might have provided testimony in support of
> his contention. In fact, counsel asked the court to keep the
> record open so that she could review the 100-150 pages of
> evidence provided by her client to determine if it was a valid
> motion. Counsel did not file any further motions with the
> court, which suggests that she felt the motion was not valid,
> again a matter of trial strategy. Under these circumstances,
> [Petitioner] has not sustained his burden of showing that his
> counsel was ineffective.

(R. 644, 648, 649-50.) The Minnesota Court of Appeals affirmed the final

commitment order on May 23, 2011. (R. 641.)

Petitioner again sought review from the Minnesota Supreme Court, arguing the

district court: (1) erred in denying his motion in limine; (2) erred in finding the MSOP

was the least restrictive treatment alternative; (3) abused its discretion and erred by

finding sufficient evidence supported Petitioner's indefinite commitment; and (4) erred in

holding that Petitioner received effective assistance of counsel. (R. 651.) On July 19,

2011, the Minnesota Supreme Court again denied the petition for review. (R. 704.)

### D. Instant Petition

Petitioner brought the instant petition against Lucinda Jesson, Commissioner of

the Department of Human Services for the State of Minnesota, and Dennis Benson, CEO

of the MSOP. Petitioner's arguments challenging his commitment as SDP/SPP fall into

three broad categories: (1) ineffective assistance of counsel; (2) substantive due process;

and (3) procedural due process. Petitioner further argues that he was denied the

following constitutional rights: (4) "he was denied an impartial decision-maker"; (5) "he

was denied his right to present evidence"; (6) "he was denied a meaningful appeal"; and

(7) "the right to self-incrimination."  Pet. at 6-9.[3]

## III.  ANALYSIS

### A.  Standard of Review

"[T]he essence of habeas corpus is an attack by a person in custody upon the

legality of that custody, and [] the traditional function of the writ is to secure release from

illegal custody."  *Preise v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas relief is

available to a state prisoner if "he is in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2254(a).  When a claim has been adjudicated

in state court, an application for a writ of habeas corpus can only be granted where the

state court's decision on the merits

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d); *see Linehan v. Milchark*, 315 F.3d 920, 924 (8th Cir. 2003)

(applying § 2254 to petition by civilly committed sexually dangerous person).

A state court decision is "contrary to" Supreme Court precedent if it "arrives at a

conclusion opposite that reached by [the Supreme] Court on a question of law" or

"decides a case differently than [the Supreme] Court has on a set of materially

---

[3] Although Petitioner's petition and supporting memorandum are not models of clarity, the Court
has endeavored to summarize and interpret his arguments as faithfully and accurately as possible.

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it unreasonably applies the correct legal principle to the facts of the prisoner's case. *Id.* at 413. A federal court may not issue the writ simply because it concludes that the state court decision applied clearly established federal law erroneously or incorrectly; the application of the law must also be unreasonable. *Lyons v. Leubbers*, 403 F.3d 585, 592 (8th Cir. 2005).

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." To satisfy this exhaustion requirement, the petitioner must fairly present the federal nature of his claim to each level of the state courts. *O'Sullivan*, 526 U.S. at 845. A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). If a court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the cases," then that federal claim has not been fairly presented. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "A district court must

dismiss habeas petitions containing both unexhausted claims and exhausted claims." *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

When a petitioner has failed to present federal constitutional claims fairly in state court, the federal court must determine whether the state procedural rules would allow a hearing on the unexhausted claim in a state court proceeding. *McCall*, 114 F.3d at 757. If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or fundamental miscarriage of justice, can be demonstrated. *Id.* at 758. A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is "firmly established" and "regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).

Individuals who have been civilly committed as SDPs have two distinct state court remedies: (1) direct appeal of their commitment determination to the Minnesota Court of Appeals; and (2) a petition in state courts for a writ of habeas corpus. *Navratil v. Jesson*, No. 12-cv-1533 (JNE/SER), 2012 WL 5439179, at *3 (D. Minn. Oct. 4, 2012), *adopting report and recommendation*, 2012 WL 5430982 (D. Minn. Nov. 7, 2012). While civilly committed individuals may raise constitutional claims in state habeas proceedings, they "are not entitled to obtain review of an issue previously raised." *Joelson v. O'Keefe*, 594 N.W.2d 905, 908 (Minn. App. 1999); *see also Navratil*, 2012 WL 5439179, at *3 (same); *McDeid v. Mooney*, No. A04-36, 2004 WL 728133, at *2 (Minn. App. Apr. 6, 2004) (same), *review denied* (Minn. May 26, 2004).

**B. SPP Designation**

At the outset, the Minnesota Attorney General argues that the petition should be dismissed because Petitioner failed to exhaust all challenges to his SPP designation. Addressing Petitioner's appeal of his final commitment order, the Court of Appeals wrote: "The district court also concluded that [Petitioner] was SPP but he has not challenged this designation. Even if this court were to agree that appellant is not SDP, his commitment as SPP would still support indeterminate civil commitment." (R. 647 n.2.) Therefore, Petitioner failed to exhaust any challenge to his SPP designation. His designation as SPP is alone sufficient to support his indeterminate commitment. *See In re Matter of Civil Commitment of Michael Dijon Pittman*, No. 62-MH-PR-08-594, slip op. at 7; Minn. Stat. § 253B.185, subd. 1(e) ("After a final determination that a patient is [SDP] **or** [SPP], the court shall order commitment for an indeterminate period of time . . . .") (emphasis added).

Petitioner here challenges his commitment as both SDP and SPP. Because Petitioner did not challenge his final civil commitment as an SPP at each level of the state courts and such classification is sufficient to support his continued commitment, he did not satisfy the exhaustion requirement of § 2254(c). Accordingly, his Petition must be denied in its entirety. For the reasons that follow, however, even if Petitioner had challenged his detention as an SPP through his state court appeals, the Court would still deny his petition.

### C. Arguments before the Court

#### 1. Ineffective Assistance of Counsel

Petitioner first argues that his right to effective assistance of counsel was violated. He asserts that his counsel was ineffective because counsel failed to (1) appeal the December 2010 district court order committing Petitioner to MSOP; (2) cite statutory authority in support or argue the facts of the motion in limine; (3) argue properly the insufficiency of evidence; (4) argue that the examiner Dr. Rosemary Linderman was not a credible witness; and (5) argue properly that there was a lesser restrictive alternative than commitment to MSOP.  Pet. at 6.

Before addressing whether these actions amount to a constitutional violation, the Court must first determine whether Petitioner's right to the effective assistance of counsel extends to a civil-commitment proceeding.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  By its express terms, this right extends only to criminal proceedings.  Petitioner's commitment is the result of a civil proceeding. *See In the Matter of the Civil Commitment of Michael Dijon Pittman*, No. 62-MH-PR-08-594, slip op. at *1 (Minn. Ct. App. May 23, 2011).  The Sixth Amendment, therefore, does not extend a right to effective assistance of counsel to civil commitment proceedings.  *See Beaulieu v. Minnesota Dep't of Human Servs.*, 798 N.W.2d 542, 548 (Minn. Ct. App. 2011) ("[T]he Sixth Amendment right to the effective assistance of counsel does not apply in a civil-commitment proceeding."); *see also Kansas v. Hendricks*, 521 U.S. 346, 349 (1997) (holding that the double jeopardy clause of the Fifth

Amendment does not apply to a civil-commitment proceeding); *Allen v. Illinois*, 478 U.S. 364 (1986) (holding that the Fifth Amendment right against self-incrimination does not apply in civil-commitment proceedings); *Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir. 2005) (holding that the confrontation clause of the Sixth Amendment does not apply in civil-commitment proceedings).  Accordingly, the Court determines that Petitioner's claim does not invoke a federal right.  In the same manner, Petitioner's arguments that his counsel did not properly argue the motion in limine, the sufficiency of the evidence, Dr. Linderman's credibility, or whether a less restrictive alternative to MSOP existed do not invoke federal rights.  Therefore, they do not rise to a federal habeas claim.

As part of his claim of ineffective assistance of counsel, Petitioner argues that there was insufficient evidence to support his civil commitment.  The Constitution, however, does not set a minimum amount of evidence necessary to support a civil commitment.  *Martin v. Mooney*, No. 06-1605 (DSD/RLE), 2007 WL 1306409, at *13-14 (D. Minn. May 3, 2007) (Doty, J.).  Moreover, even if Petitioner's challenge to the sufficiency of the evidence were to state a federal habeas claim, the Minnesota Court of Appeals considered this argument and concluded that the evidence was sufficient.  The court observed that

> [a]t the review hearing, the district court is limited to considering "(1) the statutorily required treatment report; (2) evidence of changes in the patient's condition since the initial commitment; and (3) such other evidence as in the district court's discretion enhances its assessment of whether the patient continues to meet the statutory criteria for commitment." *In re Linehan*, 557 N.W.2d 167, 171 (Minn. 1996), *vacated and remanded on other grounds*, 522 U.S. 1011, 118 S.Ct. 596 (1997).

> Respondent submitted a 60-day treatment report, written by psychologist Dr. Gary Hertog, which covered the areas prescribed by the rule. Dr. Hertog opines that [Petitioner] needs long-term treatment at a secure facility; the only secure facility is the MSOP program at either Moose Lake or St. Peter because the other option, Alpha Human Services, does not accept offenders committed as SDP or SPP; and that [Petitioner] is a danger to the public with a high risk of further acts of harmful sexual conduct. Respondent also submitted a copy of a behavioral violation from June 29, 2010; [Petitioner] admitted during the hearing that he had had four violations in the space of seven months.

(R. 646.) Based on this evidence, the Minnesota Court of Appeals concluded that the evidence was sufficient to support Petitioner's commitment as SDP, and this Court agrees. *See In the Matter of the Civil Commitment of Michael Dijon Pittman*, No. 62-MH-PR-08-594, slip op. at *6. Most importantly, this Court cannot say that the Minnesota Court of Appeals decision was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Accordingly, Petitioner's ineffective-assistance-of-counsel and insufficiency-of-the-evidence arguments fail.

### 2. Substantive Due Process

Petitioner also argues that his indefinite civil commitment violates his substantive due process rights because (1) the MCTA does not require proof of lack of control in order to commit someone as SDP, and (2) the civil-commitment program is unconstitutional because it does not contain a periodic review.

Petitioner argues that committing a person as SDP without the requirement of a finding that the person suffers from a medically diagnosable and treatable mental illness

violates the Due Process Clause of the Fourteenth Amendment. "Although freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process clause from arbitrary governmental action,' that liberty interest is not absolute." *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). According to the Supreme Court, "proof of <u>serious difficulty</u> in controlling behavior"—rather than an inability to control one's behavior—is sufficient to justify civil commitment. *Kansas v. Crane*, 534 U.S. 407, 413 (2002) (emphasis added).

As it applies in this particular case, the MCTA does not require proof that a person is unable to control his sexual impulses to be committed as SDP; instead, it requires proof by clear and convincing evidence that (1) the individual has "engaged in a prior course of sexually harmful behavior " and (2) the individual's "present disorder or dysfunction does not allow [him] to adequately control [his] sexual impulses, making it highly likely that [the individual] will engage in harmful sexual acts in the future." *In re Linehan*, 594 N.W.2d 867, 876 (Minn. 1999) ("*Linehan IV*"). The state court found that the facts on the record met that standard. Based on witness statements and Petitioner's course of harmful sexual conduct, as well as the warden of Moose Lake's description of Petitioner as "one of the most difficult offenders that they have had in the program" and Dr. Meyers' opinion that it is even less likely that Petitioner could behave in a safe manner in open society if he cannot behave in a controlled prison environment, the court found clear and convincing evidence that Petitioner is likely to engage in acts of harmful sexual conduct if released. Indeed, the district court explicitly found that he is unable to control his sexual impulses—a necessary finding to designate Petitioner as SPP. *See* R. 318

("[Petitioner] has an utter lack of power to control his sexual impulses.")  This is sufficient to meet the serious-difficulty requirement under *Crane* and satisfy Petitioner's substantive due-process rights.

Petitioner did not raise his lack-of-periodic-review argument to the Court of Appeals or to the Minnesota Supreme Court when appealing the district court's final commitment order.  Therefore, Petitioner's lack-of-periodic-review argument does not meet the exhaustion requirement of § 2254(c) and is procedurally barred.  Accordingly, Petitioner's substantive due-process challenge is denied.

### 3.  Procedural Due Process

Petitioner also argues that his commitment violates his procedural due-process rights because he was never medically diagnosed with a mental illness.    In *Foucha v. Louisiana*, the Supreme Court noted that a State may confine a person if it shows by clear and convincing evidence that "he is both mentally ill and dangerous."  504 U.S. 71, 77 (1992) (citing *Jones v. United States*, 463 U.S. 354, 368).  Neither *Foucha* nor the MCTA, however, require the district court to find that Petitioner suffered from a medically diagnosable and treatable mental illness.  *Id.* at 78 ("[K]eeping Foucha against his will in a mental institution is improper absent a **determination** in civil commitment proceedings of current mental illness and dangerousness.") (emphasis added); Minn. Stat. § 253B.18, subd. 1 (requiring a court to find "by clear and convincing evidence that the proposed patient is a person who is mentally ill and dangerous to the public" before ordering civil commitment).

Petitioner has not offered any authority supporting his argument that procedural due process requires a medical diagnosis of mental illness before he can be civilly committed. Moreover, the minimum constitutionally allowable burden of proof for civil-commitment proceedings is the same standard that the district court used—clear-and-convincing evidence. *See Addington v. Texas*, 441 U.S. 418, 432-33 (1979). The district court determined that clear and convincing evidence showed that Petitioner was mentally ill and supported his indeterminate civil commitment. This determination is not contrary to or an unreasonable application of clearly established federal law. Nor did it result in a decision based on an unreasonable determination in light of the facts presented. 28 U.S.C. § 2254(d). Accordingly, Petitioner's procedural due-process argument must be denied.

Petitioner's remaining arguments—that he was denied a neutral decision-maker, that he was denied his right to present evidence, that he was denied a meaningful appeal, and that his "right to self-incrimination" was violated—were not presented to either the Minnesota Court of Appeals or the Minnesota Supreme Court. Because Petitioner did not fairly present these claims at each level of his state court proceedings, they must be denied for failing to meet § 2254(c)'s exhaustion requirement.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. foll. § 2254. A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Hardy v. United States*, No. CIV. 01-634 (JRT), CR 98-2751 (JRT)/JGL), 2002 WL 1752215, at *5 (D. Minn. July 29, 2002). "To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings." *Hardy*, 2002 WL 1752215, at *5. Petitioner has made no such showing in the instant case. Therefore, this Court recommends that the certificate of appealability be denied.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Docket No. 1) be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. The certificate of appealability be **DENIED**.


Date:  January 9, 2013                                          s/ *Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    for the District of Minnesota

                                                    *Pittman v. Jesson et al.*
                                                    File No. 11-cv-2973 (SRN/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that

specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court by **January 24, 2013**.